211 N.J. Super. 712 (1986)
512 A.2d 590
KILLEEN TRUCKING, INC., PLAINTIFF-APPELLANT,
v.
GREAT AMERICAN SURPLUS LINES INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted June 3, 1986.
Decided July 25, 1986.
*713 Before Judges PRESSLER, DREIER and GRUCCIO.
Arthur G. D'Alessandro, attorney for appellant.
Methfessel & Werbel, attorneys for respondent (Anthony P. Pasquarelli, on the brief).
The opinion of the court was delivered by: GRUCCIO, J.S.C. (temporarily assigned).
Plaintiff Killeen Trucking, Inc. appeals from a judgment of dismissal entered by the Law Division following a non-jury trial. The trial judge found that the damage to plaintiff's container which was coupled to a trailer chassis was not part of a "trailer" covered by an insurance policy issued by defendant Great American Surplus Lines Insurance Co. We disagree and reverse.
The facts are essentially uncontested. On December 10, 1981, plaintiff's trailer which was 13 feet 6 inches high incurred damage when it attempted to pass under a bridge whose clearance was only 12 feet 6 inches. The trailer consisted of a "chassis", or wheels and frame, to which a box or "container" was attached.[1] The attachment of the container and chassis was accomplished by clamps. The effect of this coupling was to render a chassis and container identical to the trailer portion *714 of a conventional tractor trailer. The entire weight of the container is supported by the chassis and the coupled unit is then towed by a tractor.
The parties' contract of insurance provided coverage for "loss to a trailer caused by a collision." The policy defines "trailer," however the definition is not helpful in determining whether plaintiff's trailer is a trailer within the meaning of the policy language.[2] Defendant contends that the policy provides coverage only for damages sustained to the chassis portion of plaintiff's trailer. Defendant thus refused to accept liability for damages to the container portion of the trailer alleging it to be excluded by the policy.
Since there is an ambiguity in the meaning of "trailer" we turn our attention to interpreting the term "trailer" as employed in the insurance policy in question. In the absence of a specific definition in an insurance policy, the words used by the insurer must be interpreted in accordance with their ordinary, plain and usual meaning. Jorgenson v. Metropolitan Life Ins. Co., 136 N.J.L. 148, 152 (N.J.Sup.Ct. 1947); Lansco, Inc. v. Dept. of Environmental Protection, 138 N.J. Super. 275, 281-282 (Ch.Div. 1975), certif. den. 73 N.J. 57 (1977). See also Cooper v. Government Employees Ins. Co., 51 N.J. 86, 93; Mondelli v. State Farm Mut. Auto. Ins. Co., 193 N.J. Super. 522, 525 (App.Div. 1984).
While this issue has not been dealt with in a reported decision in New Jersey, other jurisdictions faced with the problem have referred to dictionary definitions in determining the plain, ordinary and commonly understood meaning of the term "trailer" in an insurance policy. See Safeguard Insurance Co. v. Justice, 203 Va. 972, 128 S.E.2d 286 (Sup.Ct. 1962); Jones v. *715 Beiber, 251 Iowa 969, 103 N.W.2d 364 (Sup.Ct. 1960). "Trailer" is defined as "a vehicle or one in a succession of vehicles hauled usually by some other vehicle: as a nonautomotive highway or industrial-plant vehicle designed to be hauled ..." Webster's Third New International Dictionary (unabridged 1971). Other jurisdictions when determining the common usage of the term "trailer" have used their motor vehicle codes for guidance. See Corsi Bros. v. Daly, 242 N.Y.S.2d 865, 39 Misc.2d 1076 (1963) aff'd 21 A.D.2d 853, 252 N.Y.S.2d 253 (1964); Safeguard Insurance Co. v. Justice, 203 Va. 972, 128 S.E.2d 286 (Sup.Ct. 1962).
Our Motor Vehicle and Traffic Code, N.J.S.A. 39:1-1 defines: "Trailer" as a "vehicle with or without motive power, other than a pole trailer, designed for carrying persons or property and for being drawn by a motor vehicle and so constructed that no part of its weight rests upon the towing vehicle." "Semitrailer" is defined as a "vehicle with or without motive power, other than a pole trailer, designed for carrying persons or property and for being drawn by a motor vehicle and so constructed that some part of its weight and that of its load rests upon or is carried by another vehicle." N.J.S.A. 39:1-1. The fact a "trailer" has none of its weight resting upon the vehicle pulling it while a "semitrailer" has part of its weight on the other vehicle is not significant when it is the plain ordinary meaning of "trailer" which is the focus of our inquiry.
The ordinary person looking at a truck pulling a "trailer" on the highway would not be able to discern whether the "trailer" was a trailer, semitrailer or container. Clearly the plain, ordinary and commonly understood meaning of "trailer" to the public if based on observation would include semis, tractor trailers and plaintiff's coupled chassis and containers.
Ambiguities and uncertainties in an insurance contract are to be resolved against the insurance company under New Jersey law. Sparks v. St. Paul Ins. Co., 100 N.J. 325, 336 (1985); Doria v. Ins. Co. of North America, 210 N.J. Super. 67, *716 71-72 (App.Div. 1986); Oldring v. Metropolitan Life Ins. Co., 492 F. Supp. 994, 998 (D.C.N.J. 1980). As stated by our Supreme Court in Sparks:
The doctrine that courts do not lightly interfere with freedom of contract must be applied cautiously and realistically with regard to complex contracts of insurance, since such contracts are highly technical, extremely difficult to understand, and not subject to bargaining over the terms. They are contracts of adhesion, prepared unilaterally by the insurer, and have always been subjected to careful judicial scrutiny to avoid injury to the public. [Sparks v. St. Paul Ins. Co., supra, 100 N.J. at 335; citations omitted].
Consequently, the insurer, as the drafter of the policy, is responsible for phrasing its contracts with such clarity as to avoid ambiguity in meaning. In the event that ambiguity does exist, "doubts as to the existence of coverage must be resolved in favor of the insured." Mazzilli v. Accident & Cas. Ins. Co., 35 N.J. 1, 8 (1961).
Here, the necessity of such a rule is highlighted. Defendant insurance company is the sole insurer of all vehicles used by plaintiff's business and that business is the transporting of chassis and containers. Therefore, if we were to interpret "trailer" narrowly as defendant argues, none of the chassis and containers owned and operated by plaintiff would fall within the policy. Our review of the record indicates that such an interpretation is totally inconsistent with the parties' original intent to establish insurance coverage for plaintiff's business. See Doria v. Ins. Co. of North America, supra, 210 N.J. Super. at 71; Kopp v. Newark Ins. Co., 204 N.J. Super. 415, 420 (App.Div. 1985).
Insurance contracts are to be construed in accordance with the reasonable expectations of the average policy holder. Perrine v. Prudential Ins. Co., 56 N.J. 120, 126 (1970); Allen v. Metropolitan Life Ins. Co., 44 N.J. 294, 305 (1965); Bauman v. Royal Indem. Co., 36 N.J. 12, 25 (1961). See also Zuckerman v. Nat. Union Fire Ins., 100 N.J. 304, 320-321 (1985); Doria v. Ins. Co. of North America, supra, 210 N.J. Super. at 71; Mondelli v. State Farm Mut. Auto. Ins. Co., supra, 193 N.J. Super. at 525. Here, it was reasonable for plaintiff to *717 expect that the policy in question provided coverage for both chassis and containers. Therefore, we hold as a matter of law that a container coupled to a chassis constitutes a "trailer" within the meaning of the insurance policy here in question.
Reversed and remanded for entry of judgment in favor of plaintiff.
NOTES
[1] A cargo shipping container, or "container," is a permanent, reusable article of transport equipment made of metal and equipped with doors for easy access to the goods inside. Assigned to facilitate the handling, loading, storage aboard ship, carriage, unloading and delivery of large numbers of packages of goods contained within, containers minimize the costs and risks of processing each package individually. The use of containers rather than conventional "trailers" and "semitrailers" developed as an efficient and economical method of handling and transporting cargo. Containers provide a means for transferring cargo from one form of transportation such as a ship to another form of transportation, such as rail or truck, without the necessity of transferring each individual item of cargo each time the mode of transportation changes. See Sea-Land Service, Inc. v. County of Alameda, 12 Cal.3d 772, 528 P.2d 56, 117 Cal. Rptr. 448 (Sup.Ct. 1974) citing Simm, "The Law of Shipping Containers" 5 J. Maritime L. 507, 513 (1974).
[2] The insurance policy provides:

"trailer" means a trailer or semitrailer not owned by the named insured while in his possession under a written trailer interchange agreement wherein he assumes liability for loss to such trailer while in his possession, but "trailer" shall not include robes, wearing apparel or personal effects.