CHARLES J. LA POLLO AND CHARLES P. LA POLLO, PLAINTIFFS-RESPONDENTS, v. HOSPITAL SERVICE PLAN OF NEW JERSEY, A/K/A NEW JERSEY BLUE CROSS PLAN, A/K/A BLUE CROSS OF NEW JERSEY AND MEDICAL SURGICAL PLAN OF NEW JERSEY A/K/A NEW JERSEY BLUE SHIELD PLAN, A/K/A BLUE SHIELD OF NEW JERSEY, JOINTLY, SEVERALLY OR IN THE ALTERNATIVE, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued September 22, 1987—Decided October 5, 1987.

Before Judges PRESSLER, BILDER and SKILLMAN.

*Donald W. Kiel* argued the cause for appellants (*Pitney, Hardin, Kipp & Szuch,* attorneys; *Dennis R. LaFiura* and *Linda F. Walker,* on the brief).

*Philip L. Faccenda* argued the cause for respondents.

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

The Blue Cross and Blue Shield hospital and medical-surgical contracts here involved exclude from coverage treatment rendered for an injury arising out of the course of employment for which benefits are "available" under the workers' compensation law. The sole issue raised by this action is whether, as a

matter of contract interpretation, workers' compensation bene-
fits are "available" to a minor who exercises the statutory
election afforded by *N.J.S.A.* 34:15–10 to pursue a common-law
tort remedy against his employer in lieu of prosecuting a
workers' compensation claim.  The trial judge held on cross-mo-
tions for summary judgment that the exclusion does not apply
in these circumstances.  We agree, concluding that, in context,
the intended meaning of the term "available" is at least ambig-
uous.

The facts are undisputed.  Plaintiff Charles J. La Pollo, then
17 years old, was severely injured during the course of his
employment by Ponderosa Steak House.  He was burned with
cooking oil while using a deep fat fryer.  Medical and hospital
bills in excess of $70,000 were incurred.  His father, plaintiff
Charles P. La Pollo, is a Blue Cross/Blue Shield subscriber
under group coverage made available to him by his employer.
The coverage, by its terms, extends to his son.  The contracts
contain this exclusionary clause:

> We do not provide benefits for services rendered for any disease, injury or
> condition arising out of and in the course of employment for which benefits
> and/or compensation are available in whole or in part under the provisions of
> any Workers' Compensation Law, Occupational Disease Law, or any similar law
> including any foreign law.
> This exclusion applies whether or not a proper and timely claim for compensa-
> tion for these services is made under these laws, whether or not benefits are
> received for these services and whether or not any recovery is received by you
> against a third party for damages resulting from the condition, disease or
> injury.

Blue Cross/Blue Shield, relying on this clause, rejected plain-
tiffs' claim for payment of medical expenses under the con-
tracts.  Its position was simply that workers' compensation
benefits were "available" to the infant plaintiff within the clear
terms of the exclusionary clause notwithstanding his election to
forego his compensation remedy in favor of his statutorily
reserved common-law right of action.  Plaintiffs accordingly
instituted this action against defendants Hospital Service Plan
of New Jersey and Medical Surgical Plan of New Jersey
seeking a declaration of coverage under the contracts.  The

trial court decided the ensuing cross-motions for summary judgment in plaintiffs' favor. Defendants appeal. We affirm.

We are guided in considering the question before us by well-established principles governing the construction of exclusionary clauses in contracts of insurance. *See Hunt v. Hospital Service Plan of N.J.,* 33 *N.J.* 98 (1960), extending those principles to the construction of hospital and medical services contracts. In short, exclusionary provisions are strictly interpreted against the insurer, ambiguities are resolved in favor of the insured, and the contract is construed so as to effect the objectively reasonable expectations of the insured. *See, e.g., Meier v. New Jersey Life Ins. Co.,* 101 *N.J.* 597, 611–613 (1986); *Sparks v. St. Paul Ins. Co.,* 100 *N.J.* 325, 335–336 (1985); *Killeen Trucking v. Great American Surplus,* 211 *N.J.Super.* 712, 715–716 (App.Div.1986); *Kopp v. Newark Ins. Co.,* 204 *N.J.Super.* 415, 420 (App.Div.1985). We are satisfied that each of these constructional canons requires the result the trial court reached here. We are further persuaded that that result is entirely consistent with the rationale of the Supreme Court in *Hunt v. Hospital Service Plan of N.J., supra.*

*Hunt* also involved a work-related injury sustained by a member of the family of a Blue Cross/Blue Shield subscriber to whom the contract coverage extended, there the plaintiff-subscriber's wife. She had suffered a back injury requiring a number of hospitalizations and extensive medical and surgical treatment. The employer, however, neither assumed responsibility for this medical treatment, nor authorized it, nor paid for it. At her workers' compensation hearing, she was found to have sustained a compensable work-related injury and was awarded benefits for temporary disability as well as for partial total permanent disability. The compensation court, however, did not award her the medical treatment expenses, concluding that since they had not been authorized, they were not compensable. Plaintiff sought payment of these expenses under his Blue Cross/Blue Shield coverage. Defendant successfully resisted the claim in the trial court by relying on the workers'

compensation exclusionary clause, which at that time excluded coverage for medical expenses "compensable" under workers' compensation law. In reversing and holding the exclusionary clause inapplicable on these facts, Justice Francis explained as follows:

> It seems to us that there are two reasonably supportable views as to the significance of the word "compensable" as it is used in its present context. One is that it connotes hospital and medical services of the type declared payable or "compensable" as an incident of an injury of the type entitled to benefits under the Workmen's Compensation Act. That position is advanced by the defendants who say that under such a construction it is of no consequence that for some additional technical condition imposed by the Legislature the particular services do not qualify for payment by the employer. The other view is that to be "compensable" in the contemplation of these insurance contracts, the services not only must be of the type covered by the compensation act but, as between the insurer and insured in the particular case, must in fact qualify for and require payment by the employer.

> In our judgment, the problem of interpretation here cannot, and in justice should not, be dealt with in terms of a generality. To adopt defendants' claim would deprive the plaintiff of the protection he paid for in the face of a declaration by the tribunal charged with administering the compensation act that his wife's medical bills did not meet the test prescribed to make them payable, *i.e.*, that they were not "compensable." To make such bills payable, that is, compensable in the sense that it is within the competence of a Deputy Director to order them paid, it is not sufficient that they follow in the wake of an employment connected injury. Rather, they must meet their own condition precedent. They must have been authorized by the employer (except where authorization is refused or neglected, an issue not pertinent in this case). See *R.S.* 34:15-15. If they are not authorized they are not "compensable," that is, able to be compensated for; they do not warrant compensation. [*Id.* 33 *N.J.* at 103]

Thus, the Court concluded

> For the reasons stated, we conclude that the word "compensable" was not used in defendants' contract in a sense which would work a forfeiture of the purchased security of payment of medical and hospital bills. Rather it was used to signify an exclusion of payment in the event that the bills qualified for payment under the workmen's compensation law and were in fact paid through that source. [*Id.* at 108]

Blue Cross/Blue Shield represents to us that the exclusionary clause presently in use and employed by it in these contracts constituted a direct response to the Supreme Court's decision in *Hunt.* Our own review of the clause persuades us that this is so. As we read the clause, the thrust of the second paragraph

of the exclusion quoted above is to make clear to the subscriber that contract benefits are forfeited, as it were, by reason of error or neglect in the manner in which compensation benefits are sought. Thus, the real import of the test imposed by that paragraph, as a matter of at least arguably intended connotation, is not whether a proper and timely claim for compensation benefits was made and not whether compensation payments were paid and not whether a third party action succeeds or fails. Rather the test is simply whether the injured person's primary remedy against the employer for medical expenses incurred in treating a work-connected injury is in workers' compensation. Viewed in this context and understood in the light of a specific response to *Hunt*, we are satisfied that in the circumstances here, namely an infant's election to forego the workers' compensation remedy altogether, the term "available" as used in the exclusionary clause is at least ambiguous. We are further satisfied that construing "available" as applying here would defeat the subscriber's objectively reasonable expectations.

In reaching this conclusion, we have considered the meaning of "available" as used in the clause in terms of the infant's election. It has long since been settled that a worker's exclusively "available" recourse for work-related injuries sustained as a result of the employer's negligence is under the workers' compensation law. *See, e.g., Schweizer v. Elox Div. of Colt Industries,* 70 *N.J.* 280 (1976). The Legislature, however, as we said in *Variety Farms, Inc. v. New Jersey Mfrs. Ins. Co.,* 172 *N.J.Super.* 10, 17–18 (App.Div.1980), has always demonstrated a special concern for working minors and has treated them more favorably than other workers. Thus, by *N.J.S.A.* 34:15-10, it reserved "to a minor under the age of 18 years the option to sue for damages in a common law action for injuries received by reason of the negligence of his or her employer, instead of limiting the minor to workers' compensation benefits under *N.J.S.A.* 34:15-7, *et seq.,* as in the case of adult employees." *Id.* at 17–18. *See also Chickachop v. Manpower, Inc.,*

84 *N.J.Super.* 129, 133 (Law Div.1964). The Legislature has thus, in effect, made available to the minor a common-law tort remedy. Clearly, however, the tort remedy and the compensation remedy cannot be simultaneously available. As a semantical exercise, it can be argued, as Blue Cross/Blue Shield asserts, that the compensation remedy is available until the infant makes an election to proceed with a tort claim, and it is his own act in making the election which makes the compensation remedy unavailable. But by the same token, it may be equally persuasively argued that it is the common-law tort remedy which is primarily available and that the compensation remedy is not therefore available until the minor elects to forego the common-law remedy. And it may also be argued that until the election is made, both are equally available, although we know they cannot be simultaneously available, or that both are equally unavailable, although we know that at least one must be available.

More important than the foregoing semantical permutations, however, is the basic sense of the exclusion. It is one thing to say, as this exclusionary clause apparently does, that if an employee who has a primary right of recourse against his employer in compensation fails to prosecute it, Blue Cross/Blue Shield will not pay the benefits which he could have recovered in compensation. It is altogether different to say that an employee who has a right of primary recourse against his employer outside of compensation must forego that right and make his claim in compensation in order to assure payment of medical expenses which would otherwise be available to him under his medical and hospital services contract. Our point is simply that, considering the minor's election in the context of legislative intent, a subscriber would be objectively reasonable in not expecting that the Blue Cross/Blue Shield benefits would be lost under the exclusionary clause by the election of the common-law remedy or that the right of election would be burdened by that loss. The clause itself certainly does not unambiguously so provide.

We appreciate the Blue Cross/Blue Shield argument that if it is required to pay benefits and if plaintiffs ultimately recover in the negligence action against the minor's employer, they may have a double recovery of medical and hospital bills. We do not, however, regard the possibility of double recovery under normal application of the collateral benefits rule helpful in determining whether the clause is ambiguous and whether its construction here against the subscriber would defeat his objectively reasonable expectations.

Affirmed.